IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
JUDGE WALKER D. MILLER

Civil Action No. 05-cv-00311-WDM-MJW

JEROMIE JAMES ROSE,

    Plaintiff,

v.

CITY OF LAFAYETTE, COLORADO; LAFAYETTE POLICE OFFICER THOMAS FRANEK, individually; LAFAYETTE POLICE OFFICER GARY THATCHER, individually; LAFAYETTE POLICE OFFICER DAVID SELF, individually; and LAFAYETTE POLICE OFFICER BETTY FRIESE, individually,

    Defendants.

## ORDER ON MOTIONS FOR SUMMARY JUDGMENT

Miller, J.

This case is before me on the motions for summary judgment filed by Defendants City of Lafayette (the "City"), Gary Thatcher, David Self, and Betty Friese (doc no 42) and by Defendant Thomas Franek (doc no 45). Plaintiff Jeromie James Rose opposes the motions. After review of the parties' written arguments and tendered evidence, I conclude oral argument is not required. For the reasons that follow, I will grant the motions.

<u>Factual Background</u>

As an initial matter, I note that the Plaintiff failed to follow my Pretrial and Trial Procedures with regard to his response to the motion for summary judgment. He did not provide a response to the Defendants' statements of undisputed facts, nor did he include a statement of additional undisputed (or disputed) facts in separately numbered paragraphs. As a result of these omissions, I will accept the facts as set forth in the

Defendants' briefs as undisputed, except to the extent that I can determine the existence of a genuine dispute raised in the response brief.

In the early morning hours of February 18, 2003, Plaintiff left a bar after consuming a number of drinks and while on medication. Another patron attempted to prevent him from driving home; in the course of their interaction, Plaintiff hit the patron with a car door. Police were contacted and were told that Plaintiff had left on foot. Franek made the initial contact with Plaintiff about a block from the bar. Plaintiff was taken to the ground by Franek, but this does not appear to be the event underlying Plaintiff's claims. Plaintiff was intoxicated and yelling and struggling during the arrest.

Plaintiff was taken to the hospital and evaluated. He was then taken to the Lafayette Police Department by Self for booking and placed in a holding cell. Self was filling out the booking forms; at some point thereafter Franek, Thatcher and Friese also entered the booking room. Plaintiff was told that he would be processed, issued a summons, and then released to his father. According to Plaintiff, Franek came by the holding cell and made a comment along the lines of "you shouldn't hit women" in a tone that was offensive to Plaintiff. Franek and Self discussed, in front of Plaintiff, whether a charge of resisting arrest should be included in the pending charges. Plaintiff then became agitated, began swearing at the officers, threatened to kill the officers, and began kicking and hitting the cell doors. Plaintiff also was spitting. The parties dispute whether Plaintiff was spitting "at" the officers, but it is undisputed that his spit came in their vicinity and hit at least one officer. The officers told Plaintiff to be quiet and warned him to stop spitting but he continued his behavior. At some point Franek obtained a taser and told

Plaintiff to "shut up" or the taser would be used. Plaintiff also challenged Franek to a fight, saying that Franek should take off his gun belt and come into the cell to show who was the "better man." Franek responded by saying that Plaintiff needed to calm down since he was already in enough trouble.

The officers then determined that, because of his aggressive conduct, Plaintiff could not be released to his father. They told Plaintiff that they were going to handcuff him and place a spit hood over his head; Plaintiff became compliant when they entered the cell and allowed the handcuffs and hood to be placed on him. Thereafter, Plaintiff attempted to remove the spit hood and was able to get it partially off his face.

Officer Franek then entered the cell with the taser. Plaintiff contends that he was suffering an anxiety attack and believed that Franek was pointing a gun at him and so reacted to protect himself; in the process, his foot made contact with Franek's chest and the taser fell to the floor. Franek attempted to restrain Plaintiff but Plaintiff continued to struggle. Franek and Thatcher believed that Plaintiff was grabbing at Franek's gun. Thatcher then picked up the taser and used it on Plaintiff. Plaintiff did not calm down or respond to the officers' instructions and Thatcher used the taser again. Plaintiff became calm at this point and the officers left the cell. Shortly thereafter, he complained that he was not feeling well. Franek entered the cell and removed the spit hood. Plaintiff did not vomit but did spit in the toilet. Franek then replaced the spit hood. Plaintiff did not want the spit hood and began struggling with Franek. Franek again subdued Plaintiff and Plaintiff was placed in more restraints.

Plaintiff was eventually taken to the Boulder County Jail to complete his booking but

was first examined by paramedics. At the jail, Plaintiff continued his physically and verbally aggressive behavior.

At the time of the incident, the City had a policy concerning the use of tasers and Franek and Thatcher were both certified to use the taser.

Plaintiff apparently does not dispute these facts but offers additional evidence about Franek, specifically that Franek had had on- and off-duty verbal altercations with citizens and had recently returned from a voluntary mental health leave. He also notes that Franek's use of the taser may have been in violation of the City's use of force policy. In addition, he contends that Franek's superiors had not adequately checked on Franek's status after returning to the job.

Plaintiff filed this action asserting claims for: (1) violation of civil rights pursuant to 42 U.S.C. § 1983 for excessive force; (2) violation of civil rights pursuant to 42 U.S.C. § 1983 for deprivation of due process, based on excessive force and failure to intervene; (3) violation of civil rights pursuant to 42 U.S.C. § 1983 for deprivation of due process and Colorado state law for failing to keep safe a person in custody; (4) violation of civil rights pursuant to 42 U.S.C. § 1983 for failing to train, supervise, and discipline; (5) conspiracy to violate civil rights. Plaintiff has conceded that he has not discovered facts sufficient to state a claim for conspiracy and that this claim should be dismissed.[1]

## Standard of Review

Summary judgment is appropriate when there is no genuine issue as to any material

---

[1] In his deposition, Plaintiff also testified that he based his claims on the Defendants' failure to provide him medical attention; however, this claim did not appear in his Complaint and his response brief contains no discussion in this regard.

fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56. A factual issue is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

Where "the moving party does not bear the ultimate burden of persuasion at trial, it may satisfy its burden at the summary judgment stage by identifying 'a lack of evidence for the nonmovant on an essential element of the nonmovant's claim.'" *Bausman v. Interstate Brands Corp.*, 252 F.3d 1111, 1115 (10th Cir. 2001) (quoting *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 671 (10th Cir. 1998)). Then, "[t]o avoid summary judgment, the nonmovant must establish, at a minimum, an inference of the presence of each element essential to the case." *Id.*

## Discussion

Defendants move for summary judgment, alleging that no constitutional violation occurred and that they are entitled to qualified immunity.

1.  Excessive Force

The Fourth Amendment of the United States Constitution bars the use of excessive force during the making of an arrest, as well as during the period immediately following arrest and before the person is taken before a judicial official for a probable cause determination. *Barrie v. Grand County, Utah,* 119 F.3d 862, 866 (10th Cir. 1997). Excessive force claims are evaluated under an "objective reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 388 (1989). Determining whether the level of force used is "reasonable" under the Fourth Amendment requires a careful balancing of "the nature and quality of the intrusion on the individual's Fourth Amendment interests" against the

countervailing governmental interests at stake. *Id.* at 396 (citations omitted). Some of the factors to be considered include the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officers or others, and whether the individual is actively resisting arrest or attempting to evade arrest by flight. *Id.* These factors must be considered with "allowance for the fact that police officers are often forced to make split-second judgments-in circumstances that are tense, uncertain, and rapidly evolving-about the amount of force that is necessary in a particular situation." *Id.* at 397.

Plaintiff alleges that Thatcher's use of the taser and Franek's physical take-downs of Plaintiff in the holding cell were unreasonable. Considering the circumstances as a whole, I conclude that no reasonable jury would find that the officers' use of force in these circumstances was objectively unreasonable. Although the initial crimes for which Plaintiff was arrested were relatively minor, his behavior in the holding cell was physically violent and included threats against the officers. In addition, the unpredictability of Plaintiff's behavior is relevant. He had alternated between being compliant and aggressive/confrontational, which meant that the officers could not know whether and to what degree he would react physically when they entered the cell.[2] It is undisputed that the taser was not employed until after Plaintiff had intentionally or unintentionally kicked Franek and appeared to be grabbing at Franek's weapon. I note that Plaintiff was wearing

---

[2]Franek's actions in bringing the taser into the holding cell when attempting to replace the spit hood does not appear to have been a violation of City policy. The general order permits use of taser devices "when physical force is necessary and justified to prevent the possibility of injury to the officer or another person." In addition, the policy prohibits use of tasers on subjects in custody, "unless physical resistance must be overcome." Given Plaintiff's behavior, the officers could reasonably have anticipated that he might present physical resistance, which in fact he did.

handcuffs at the time, which lessens the threat of harm he may have presented at the time; nonetheless, in light of his previous conduct and the uncertainty presented in the struggle, it was not objectively unreasonable to believe that the gun could be released and cause injury.  Finally, although Plaintiff was not resisting "arrest," since he was already in custody, he was certainly physically resisting the officers and was not complying with verbal commands.

Plaintiff argues that the use of force was not objectively reasonable because "the necessity of any additional force at that time was entirely created by Defendant Franek's unnecessary and unreasonable entry into the holding cell" and because Franek escalated the situation with his comments.  Plaintiff also alleges that Franek might have entered the holding cell in order to respond to Plaintiff's challenge to a fight.

Plaintiff is correct that whether an officer's own reckless or deliberate conduct unreasonably created the need to use force, if immediately connected to the suspect's threat of force, is a factor to consider.  *See Allen v. Muskogee, Okla.,* 119 F.3d 837, 840 (10th Cir. 1997).  Here, however, Plaintiff's evidence is insufficient to demonstrate that Franek unreasonably escalated the interaction such that it created the need to use force.  The only evidence of this is the alleged comment by Franek, in a "taunting" tone, that Plaintiff should not hit women.  Beyond this, the evidence shows only that Franek, along with the other officers, told Plaintiff to be quiet and to calm down and that they may have been laughing at him as he became agitated.  In addition, there appears to have been a significant gap between the alleged "taunt" and the use of the taser, which undermines any immediate connection between the two.  Plaintiff had apparently calmed down after his

7

prolonged outburst and allowed the hood and handcuffs to be placed on him. He then attempted to remove the hood. Since Plaintiff had previously been spitting on the officers, it was not unreasonable under the circumstances to replace the hood. Plaintiff's kick and physical resistance were the precipitating events that caused the taser to be used, not Franek's entry into the holding cell, regardless of his purpose. Moreover, even if the reason for Plaintiff's behavior was his alleged anxiety, Plaintiff has not shown that a reasonable officer in the position of the Defendants would have had reason to know that Plaintiff was attempting to protect himself, as opposed to continuing his previous violent and hostile behavior against the officers.

Plaintiff also argues that Franek's alleged intent when entering the cell is relevant under a substantive due process excessive force claim. Plaintiff is correct that "following arrest the due process protections of the Fourteenth Amendment are triggered to protect a pretrial detainee from excessive force approaching punishment." *Weimer v. Schraeder*, 952 F.2d 336, 340 (10th Cir. 1991) (citing *Graham*). However, the Tenth Circuit has ruled that claims based on physical assaults by police on a person arrested but not yet presented to a judicial officer are subject to the Fourth Amendment objectively reasonable framework, not substantive due process. *Austin v. Hamilton,* 945 F.2d 1155, 1160 (10th Cir. 1991), *abrogated on other grounds, Johnson v. Jones*, 515 U.S. 304 (1995). Other types of claims of mistreatment in the post-arrest context may fall under due process considerations, *see Barrie*, 119 F.3d at 866 (recognizing that claim based on post-arrest jail suicide is analyzed under due process clause), but Plaintiff's do not.

Even if I were to apply a substantive due process analysis here, Plaintiff would not

8

prevail. Construing the facts in the light most favorable to Plaintiff, he has not shown that the acts of the officers were "malicious and sadistic" rather than a good faith effort to keep Plaintiff under control. *See Northington v. Jackson,* 973 F.2d 1518, 1523 (10th Cir. 1992) (quoting *Hudson v. McMillian*, 503 U.S. 1 (1992)). This determination requires consideration of factors such as the relationship between the need for application of force and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Id.* at 1523-25 (citations omitted). As discussed, in light of Plaintiff's physically aggressive behavior and the apparent danger presented by his physical contact with Franek and the weapon, no reasonable jury could conclude that the use of force was unnecessary and inflicted wantonly. The events alleged here do not approach the "shocks the conscience" standard that Plaintiff must establish. *Uhlrig ex rel. Uhlrig v. Harder*, 64 F.3d 567, 571 (10th Cir. 1995).

Plaintiff has apparently conceded that he does not have a due process claim pursuant to C.R.S. § 17-26-103, which requires that keepers of county jails and adult detention centers to keep persons committed there safe. The statute contains no provisions for holding cells in local police departments and does preclude the use of force. Plaintiff offers no argument demonstrating that this provision could underlie a cause of action here.

2.  Qualified Immunity

The individual defendants have also asserted defenses of qualified immunity. "In civil rights actions seeking damages from governmental officials, those officials may raise

the affirmative defense of qualified immunity, which protects all but the plainly incompetent or those who knowingly violate the law." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1185 (10th Cir. 2001). When a defendant asserts a qualified immunity defense, the burden shifts to the plaintiff to "first establish that the defendant's actions violated a constitutional or statutory right." *Medina v. Cram,* 252 F.3d 1124, 1128 (10th Cir. 2001). Thus, in the context of a motion for summary judgment, I must first consider the threshold question: "[t]aken in the light most favorable to the party asserting the injury, do the facts alleged show the officer's conduct violated a constitutional right?" *Holland*, 268 F.3d at 1185. If so, then I must "ask whether the right was clearly established at the time of defendant's unlawful conduct." *Id.* "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Id.* (internal quotation omitted). "Qualified immunity shields an officer from suit when she makes a decision that, even if constitutionally deficient, reasonably misapprehends the law governing the circumstances she confronted." *Saucier v. Katz*, 533 U.S. 194, 206 (2001).

As discussed, I conclude that the undisputed facts, construed in the light most favorable to Plaintiff, do not demonstrate that the use of force violated Plaintiff's constitutional rights. In the alternative, however, even if the use of force was unreasonable, Defendants have shown that the rights violated were not clearly established at the time. Neither Plaintiff nor Defendants have identified any published cases involving the use of a taser in circumstances factually similar to these in which the use of force was determined to be objectively unreasonable. Rather, Plaintiff argues that because the facts

are in dispute, the issue cannot be determined as a matter of law. I disagree. Even taking all the facts as alleged by Plaintiff and making all favorable inferences in his favor, there is nothing to indicate that a reasonable officer in the individual Defendants' position would have had "fair notice" that their conduct was unlawful.

3.   Failure to Intervene

Plaintiff alleges that the City, Self, and Friese should be liable derivatively for the alleged excessive force because they failed to intervene and prevent the harm. "[A] law enforcement official who fails to intervene to prevent another law enforcement official's use of excessive force may be liable under § 1983." *See Mick v. Brewer*, 76 F.3d 1127, 1136 (10th Cir. 1996). Because I find no underlying constitutional violation, these Defendants cannot be liable on this basis.

4.   Municipal Liability

Finally, Plaintiff's claim against the City fails as well. In order to prevail against a municipality under section 1983 for the actions of a municipal employee, a plaintiff must show that (1) the municipal employee committed a constitutional violation; and (2) that a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). Here, as discussed, Plaintiff cannot prove that any of the officers committed a constitutional violation. Summary judgment is appropriate on this claim as well.

Accordingly, it is ordered:

1.   The motions for summary judgment (doc nos 42 and 45) are granted and this case is dismissed with prejudice.

DATED at Denver, Colorado, on February 12, 2007.

BY THE COURT:

s/ Walker D. Miller
United States District Judge